UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

FRANK REYES FONTANEZ,

    Plaintiff,

vs.

TEVA PHARMACEUTICALS USA, INC.,
a Foreign Profit Corporation,

**Jury Trial Demanded**

    Defendant.
_____/

# COMPLAINT

The Plaintiff, Frank Reyes Fontanez, by his undersigned attorney, makes the following Complaint against the Defendant, Teva Pharmaceuticals USA, Inc.:

## Jurisdiction and Venue

1. This action is brought to redress violations of the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq.* This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617(2) and 28 U.S.C. § 1331.

2. The Defendant resides in this district, the claims asserted in this action arose within this district, and the alleged statutory violation occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. § 2617(2) and 28 U.S.C. § 1391.

## Parties

3. The Plaintiff, Frank Reyes Fontanez, is and at all times relevant to this complaint was an adult citizen and resident of the State of Florida.

4.       The Defendant, Teva Pharmaceuticals USA, Inc. is and at all times relevant to this complaint was a corporation organized in the state of Delaware with a principal place of business in New Jersey. The Defendant is authorized to do business in the state of Florida and maintains offices in multiple Florida locations, including the city of Sunrise in Broward County.

### General Allegations

5.       The plaintiff was employed by the Defendant or its affiliates at various locations in Puerto Rico and the United States from 2005 through 2021.

6.       In August 2016 and continuing until his discharge in 2021, the Defendant employed the Plaintiff in the Defendant's office in Sunrise, Broward County, Florida.

7.       On August 10, 2021, the Plaintiff felt in good health when he reported to work. As the morning progressed, however, the plaintiff began to develop a cough.

8.       The Plaintiff advised his supervisor, Jaimie Morales, that in light of his cough, he needed time off from work to obtain a COVID-19 test. Morales agreed to give plaintiff time off from work to complete COVID-19 testing.

9.       In order to have his health condition evaluated, the Plaintiff obtained an antigen test for COVID-19 on August 11, 2021 and received a positive result on that same day. The Plaintiff advised the Defendant of that result and of his need for continued time off for further evaluation and testing of his health condition.

10.       The Plaintiff also spoke to Geraldine Miller-Myrie, a Human Resources employee, on August 11, 2021. The plaintiff advised Miller-Myrie of his test result. Miller-Myrie instructed the plaintiff to obtain further testing to confirm the result.

11. The Plaintiff was given another antigen test for COVID-19 on August 12, 2021 and received a negative result on that same day. The Plaintiff advised the Defendant of that result and of his need for continued time off for further testing.

12. The Plaintiff was given another antigen test for COVID-19 on August 13, 2021 and received a negative result on that same day. The Plaintiff emailed his negative test results to Miller-Myrie and asked whether he should resume work on August 16, 2021 or should await the results of a PCR test. Miller-Myrie responded that he should obtain a negative PCR test result before returning to work.

13. The Plaintiff was given a PCR test for COVID-19 on August 14, 2021. On August 16, 2021, he received a negative result.

14. The Plaintiff emailed the negative PCR test result to Miller-Myrie on August 16, 2021 and asked if he could return to work on August 17, 2021. Miller-Myrie emailed the Defendant at 4:00 PM that day and said: "Hello Frank and thank you for the emails.  Great - you are cleared to return to work tomorrow barring any symptoms."

15. Later in the evening on August 16, 2021, Miller-Myrie called the Plaintiff and told him that an investigation was being conducted by HR, that she was unaware of the investigation when she cleared him to return to work, and that he was suspended pending the result of the investigation. She also told him that someone from HR would notify him of the result of the investigation.

16. The Plaintiff then called Morales, who denied knowledge of any investigation.

17. The Defendant terminated the Plaintiff's employment, effective August 19, 2021.

18. The letter notifying the Plaintiff of his termination alleged that he was being discharged because he reported to work ill on August 2, 2021, that he did not leave when asked to do so by an unidentified member of senior management, and that he returned to work ill on August 3, 2021 and was again told by an unidentified person to leave work. Those allegations were false and were known to be false by the Defendant.

19. The Plaintiff was not ill on August 2 or 3, 2021 and was not asked to leave work on either of those dates. No facts existed which could have been reasonably interpreted as supporting those allegations.

20. The termination letter also accused the Plaintiff of not "divulging" his illness to security when he reported to work and of exposing co-employees to his illness. Those accusations were false. The defendant did not become ill until after he reported to work on August 11, 2021 and did not expose any co-employees to his illness. No facts existed which could have been reasonably interpreted as supporting the accusations made in the termination letter.

21. The termination letter also accused the Plaintiff of poor job performance. Those accusations were untrue, as is evidenced by a satisfactory mid-year performance evaluation that the Defendant provided to the Plaintiff in August 2021, shortly before his employment was terminated. The performance evaluation makes no suggestion that the Plaintiff's employment was in jeopardy and is inconsistent with the claim that his job performance justified the termination of his employment.

## FMLA Eligibility

22. The Defendant had 50 or more employees on each working day during each of 20 or more workweeks during calendar years 2020 or 2021.

23. At all times relevant to this Complaint, the Defendant had at least 50 employees working within 75 miles of the worksite where the Plaintiff was employed.

24. At all times relevant to this Complaint, the Defendant was an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4).

25. The Plaintiff was employed by the Defendant for more than 12 months and worked for more than 1,250 hours of service within the 12 months prior to the date on which he requested an FMLA leave.

26. At all times relevant to this Complaint, the {laintiff was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

27. The Plaintiff was entitled to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1)(D) and 29 C.F.R. § 825.113(c) to obtain examinations and evaluations to determine whether he suffered from COVID-19, a serious health condition.

28. The Plaintiff provided timely notice of his need for a leave by giving notice as soon as was practicable.

29. The Plaintiff provided the Defendant with sufficient information to make the Defendant aware of his need for an FMLA-qualifying leave.

### First Claim: FMLA Interference

30. The Plaintiff realleges and incorporates paragraphs 1 to 29 of this Complaint.

31. The Plaintiff was eligible for the FMLA's protection.

32. The Defendant was covered by the FMLA.

33. The Plaintiff was entitled to leave under the FMLA.

34. The Plaintiff gave the Defendant notice of his intent to take a leave that was subject to the protections of the FMLA.

35. The Defendant denied the Plaintiff a benefit to which she was entitled under the FMLA by refusing to reinstate the Plaintiff to his employment after his need for a leave ended.

36. As a direct, proximate, and substantial result of the interference with the Plaintiff's rights under the FMLA, the Plaintiff suffered monetary harm, including but not limited to a loss of wages and benefits.

### Second Claim: FMLA Retaliation

37. The Plaintiff realleges and incorporates paragraphs 1 to 29 of this Complaint.

38. The Plaintiff was eligible for an FMLA-protected leave.

39. The Plaintiff engaged in activity protected by the FMLA by giving the Defendant notice of his intent to take a leave that was subject to the protections of the FMLA, by taking a FMLA-protected leave, and by requesting reinstatement to his position when the need for a leave ended.

40. The Defendant knew that the Plaintiff had engaged in activity protected by the FMLA.

41. The Plaintiff suffered an adverse employment action when his employment was suspended.

42. The Defendant suspended the Plaintiff's employment because he engaged in activities protected by the FMLA.

43. The Plaintiff suffered an adverse employment action when his employment was terminated.

44. The Defendant terminated the Plaintiff's employment because he engaged in activities protected by the FMLA.

45. By suspending and terminating the Plaintiff's employment because he engaged in protected activity by taking a job-protected leave and requesting reinstatement, the Defendant acted with an unlawful retaliatory intent and discriminated against the Plaintiff in violation of 29 U.S.C. § 2615(a)(2).

46. Facts that evidence the defendant's unlawful retaliatory intent include but are not limited to:

   a. The suspension was imposed less than one week after the Plaintiff began his protected leave.

   b. The termination occurred less than one week after the Plaintiff announced his intent to exercise his statutory right to be reinstated to his employment.

   c. The Defendant's human resources officer told the Plaintiff that he was cleared to return to work just hours before the suspension was imposed.

   d. Neither the Defendant's supervisor nor the human resources officer who cleared the Plaintiff to return to work were aware that an alleged "investigation" of the Plaintiff had been commenced.

   e. The alleged grounds for the investigation, suspension, and termination were false and the Defendant knew them to be false because the Plaintiff was not ill on the dates alleged his termination letter and no evidence could reasonably have suggested otherwise. The alleged grounds for termination were a pretext to conceal a discriminatory motivation.

   f. The alleged grounds for the investigation, suspension, and termination were false and the Defendant knew them to be false because the Plaintiff was not ill

when he reported for work and no evidence could reasonably have suggested otherwise. The alleged grounds for termination were a pretext to conceal a discriminatory motivation.

    g.    The alleged grounds for the investigation, suspension, and termination were false and the Defendant knew them to be false because allegations about the Plaintiff's poor job performance were inconsistent with a favorable mid-year performance review provided to the Plaintiff just days before his discharge. The performance review did not suggest that the Plaintiff's employment was in jeopardy. The alleged grounds for termination were a pretext to conceal a discriminatory motivation.

47.    As a direct, proximate, and substantial result of the above-described discrimination, the Plaintiff suffered harm, including but not limited to a loss of wages and benefits.

### Relief Requested

WHEREFORE, Plaintiff Frank Reyes Fontanez requests judgment against the Defendant, Teva Pharmaceuticals USA, Inc. for:

    a.    lost wages, the value of lost benefits, and other monetary losses in amounts to be proved at trial;

    b.    interest;

    c.    liquidated damages equal to the sum of the monetary losses and the interest requested above;

    d.    reinstatement or an award of future wage loss and such other equitable or injunctive relief as the court deems just;

      e.    an award of reasonable attorney's fees and the costs of this action pursuant to 29 U.S.C. § 2617(a)(3); and

      f.    such further relief as is just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: December 20, 2021
Plantation, Florida

Respectfully submitted,

*/s/ Robert S. Norell*
Robert S. Norell, Esq.
Fla. Bar No. 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W. 70th Avenue
Suite 305
Plantation, Florida 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiff*